1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ZAID KHAN, et al.,                    No.  2:23-cv-02814-CKD

12              Plaintiffs,

13        v.                               ORDER

14   ANTONY J. BLINKEN, et al.,

15              Defendants.

16   _____

17        Plaintiffs filed a petition for writ of mandamus and complaint for injunctive relief. (See

18   ECF No. 1.) Pursuant to the parties' consent and the court's order, this matter is before the

19   undersigned for all purposes including trial and entry of judgment. (ECF Nos. 6, 7, 8.) The

20   defendants seek to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil

21   Procedure. (ECF No. 9.) In the alternative, defendants seek summary judgment under Rule 56 of

22   the Federal Rules of Civil Procedure. (Id.) This matter was deemed appropriate for decision

23   without oral argument under Local Rule 302(g). Defendants' request for judicial notice is also

24   before the court. (ECF No. 17.) For the reasons set forth below, the request for judicial notice and

25   the motion to dismiss are denied. Defendants' alternate motion for summary judgment is granted

26   as to the claims of the plaintiffs for whom defendants presented evidence. Counsel for the parties

27   shall confer regarding the status of the claims of the remaining plaintiffs and file a joint status

28   report or a stipulation for voluntary dismissal within 14 days.

1

1          **I. Background**

2          Plaintiffs are several United States citizens or legal permanent residents ("sponsoring

3     plaintiffs") and their respective Pakistani national relatives ("beneficiary plaintiffs") awaiting

4     interviews at U.S. Embassy in Islamabad. (ECF No. 1, ¶ 1.) Defendants are Antony J. Blinken,

5     sued in his official capacity as the United States Secretary of State, Rena Bitter, sued in her

6     official capacity as Assistant Secretary of State for Consular Affairs, Pamela Bentley, sued in her

7     official capacity as the United States Embassy in Islamabad Consul General and Andrew Schofer,

8     sued in his official capacity as United States Embassy in Islamabad Deputy Chief of Mission.

9          Foreign nationals may petition for immigrant visas based on a familial relationship with a

10    U.S. citizen or Lawful Permanent Resident. See 8 U.S.C. §§ 1151(b)(2)(A)(i), 1153(a)(1)-(4);

11    1201(a)(1)(A); 22 C.F.R. §§ 42.21, 42.42. In accordance with the Immigration and Nationality

12    Act (INA), consular officers have authority to issue immigrant visas. (ECF No. 1, ¶ 38 (citing 8

13    U.S.C. § 1201; 22 C.F.R. § 42.71).) Before a consular officer can issue a visa, an applicant must

14    make a proper application, 8 U.S.C. § 1201(a)(1), "in such form and manner" prescribed by the

15    regulations, id. § 1202(a).

16         For a family-based immigrant visa, the sponsoring U.S. citizen or legal permanent resident

17    must first file a "Petition for Alien Relative (Form I-130)" with the United States Citizenship and

18    Immigration Services (USCIS). (ECF No. 1, ¶ 41 (citing 8 U.S.C. § 1154).) After the USCIS

19    approves the I-130 form, if the noncitizen beneficiary of the visa petition is not located in the

20    United States, it transfers the petition to the National Visa Center (NVC) for preprocessing. (Id. ¶

21    42.) "Immediate relatives" who are the children, spouses, and parents of U.S. Citizens may

22    proceed directly to the next step, while others, including those in five family-preference

23    categories—for more distant relatives of U.S. citizens and close relatives of lawful permanent

24    residents—must wait for a visa number to become available. See 8 U.S.C. § 1151(b)(2)(A)(i)

25    (noting "immediate relatives" are not subject to direct numerical limitations). The beneficiary

26    may then begin the visa application process by submitting a DS-260 Online Immigrant Visa and

27    Alien Registration Application. (ECF No. 1, ¶ 43 (citing 9 Foreign Affairs Manual (FAM)

28    § 504.1-2(a)(1).)

Once the NVC determines an applicant is documentarily complete and the applicable consular officer completes all the "necessary clearance procedures," the applicant is considered documentarily qualified "to apply formally for an immigrant visa[.]" 22 C.F.R. § 40.1(h). This requires "personally appearing before a consular officer and verifying by oath or affirmation the statements contained on ... Form DS–260[.]" Id. § 40.1(l). The NVC schedules interviews at the applicable overseas consular post "in the chronological order of the documentarily complete applicants." 9 FAM 504.1-2(d)(1). During the interview, an applicant can formally apply for an immigrant visa by swearing to or affirming the contents of the DS-260 and signing it before a consular officer. 22 C.F.R. § 42.67(a). The INA provides "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). Once an application is properly completed and executed before a consular officer, the officer must either issue or refuse to issue a visa. See 22 C.F.R. § 42.81(a).

Here, the sponsoring plaintiffs have all filed I-130 forms for the beneficiary plaintiffs. (ECF No. 1, ¶¶ 12–28.) The USCIS approved their petitions and sent them to the NVC. (Id.) The beneficiary plaintiffs submitted DS-260 Immigrant Visa Electronic Applications and all the required documents and applicable fees for immediate relative immigrant visas. (Id.) The NVC determined each of the beneficiary plaintiffs was "documentarily qualified" between 1 year and 3.5 years prior to the filing of the complaint. (Id.) Although an interview is the only way plaintiffs can make formal visa applications, the NVC has not scheduled the remaining plaintiffs' interviews. (Id.)

Plaintiffs filed this action on December 4, 2023, between 1 and 3.5 years after the last government action—when the NVC found the beneficiary plaintiffs to be documentarily qualified. (ECF No. 1.) The complaint details three alleged unlawful policies: (1) expansion of consular chief's authority, (2) NIV prioritization scheme, and (3) understaffing scheme of U.S. Embassy in Islamabad. (Id., ¶¶ 92-119.) The complaint asserts a cause of action for unreasonable delay under the Administrative Procedure Act ("APA") and seeks relief under the Mandamus Act. (Id., ¶¶ 136-155.) Plaintiffs seek to enjoin defendants from unreasonably delaying the adjudication and issuance of beneficiary plaintiffs' immigrant visa applications and to process

3

1  their applications, schedule beneficiary plaintiffs for immigrant visa interviews, and issue visas to

2  eligible beneficiary plaintiffs, among other relief. (Id., Prayer for Relief.)

3        Some of the individual plaintiffs have voluntarily dismissed their claims against defendant

4  Blinken. (ECF No. 12.) In addition, several plaintiffs have dismissed their claims by stipulation

5  signed by counsel for all appearing parties. (ECF Nos. 15, 22.)

6        On February 2, 2024, defendants filed the motion presently before the court, seeking

7  dismissal of the complaint, or, in the alternative, summary judgment, on all remaining claims.

8  (ECF No. 11.) Defendants argue plaintiffs fail to state a claim under the APA because they cannot

9  point to a clear duty to act and because there has been no unreasonable delay. (Id.) Defendants

10  argue disposition of the APA claims resolves the duplicative mandamus claims. (Id.) Plaintiffs

11  oppose the motion, and defendants filed a reply. (ECF Nos. 13, 14.)

12       **II.      Request for Judicial Notice**

13        On April 2, 2024, defendants requested that the court take judicial notice of developments

14  in the visa cases of several of the beneficiary plaintiffs, as reflected in the State Department's

15  Consular Consolidated Database ("CCD"), and as presented by declaration of Rebecca Austin,

16  NVC Assistant Director. (ECF No. 17.) Specifically, defendants request the court take judicial

17  notice that several of the principal beneficiary plaintiffs were scheduled to have consular

18  interviews. (Id. at 3.) Plaintiffs filed a response to the request for judicial notice arguing, in

19  relevant part, that Naila Tabassum's interview was cancelled. (ECF No. 18.) Defendants filed a

20  reply. (ECF No. 20.)

21        Courts may take judicial notice of facts that are "not subject to reasonable dispute" where

22  they are "generally known within the court's territorial jurisdiction" or "can be accurately and

23  readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid.

24  201(b). Courts may, where appropriate, take judicial notice of agency and administrative records.

25  See Dent v. Holder, 627 F.3d 365, 371-72 (9th Cir. 2010) (declining to take judicial notice).

26        Here, the court finds no indication the facts presented from the official State Department

27  records are either generally known or readily accessible. In addition, of the plaintiffs who were

28  scheduled for interviews, only Naila Tabassum is still an active party in this case. Plaintiffs

1   dispute that Tabassum's interview was scheduled as it was also cancelled. Under these

2   circumstances, the court declines to take judicial notice of the facts presented by defendants from

3   the State Department's database. See generally Lee v. City of Los Angeles, 250 F.3d 668, 689-90

4   (9th Cir. 2001) (declining to take judicial notice of reasonably disputed facts simply because they

5   are stated in a public record).

6         **III.**     **Plaintiffs' Opposition Argument as to Alleged Unlawful Policies**

7         In opposition to defendants' alternate motion to dismiss or for summary judgment,

8   plaintiffs argue the defendants' unlawful policies, as detailed in the complaint— expansion of

9   consular chief's authority, NIV prioritization scheme, and understaffing scheme of U.S. Embassy

10  in Islamabad—are subject to this court's review. (ECF No. 13 at 22-27, 32-33.)[1] As defendants

11  point out, though, plaintiffs did not plead causes of action challenging these policies. Plaintiffs

12  alleged unreasonable delay under the APA, but they did not, for example, bring any claims that

13  the described policies are arbitrary and capricious in violation of the APA. The complaint did not

14  give fair notice of any policy challenge claims as argued in the plaintiffs' opposition papers.

15  Moreover, amendment to add such causes of action would be futile because the claims would not

16  survive a motion to dismiss. See Iqbal v. Blinken, No. 2:23-cv-01299-KJM-KJN, 2023 WL

17  7418353, at *6-7 (E.D. Cal. Nov. 9, 2023) ("[p]laintiffs do not have standing to challenge the

18  purported expansion of consular chiefs' authority [or the] non-immigrant visa prioritization

19  scheme"); id. at *5 ("plaintiffs challenge—regarding staffing levels—is nonjusticiable because it

20  is a matter firmly committed to the Secretary's discretion").

21        **IV.**     **Motion to Dismiss**

22           **A.  Legal Standards**

23             **1.  Rule 12(b)(6)**

24        Dismissal under Rule 12(b)(6) may be warranted for "the lack of a cognizable legal theory

25  or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica

26  Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In evaluating whether a complaint states a claim

27

28  [1] Referenced page numbers are those assigned by CM/ECF at the top of the page.

1   on which relief may be granted, the court accepts as true the allegations in the complaint and

2   construes the allegations in the light most favorable to the plaintiff. Hishon v. King & Spalding,

3   467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).

4        In ruling on a motion to dismiss brought under Rule 12(b)(6), the court may consider

5   material properly submitted as part of the complaint and documents that are not physically

6   attached to the complaint if their authenticity is not contested and the plaintiff's complaint

7   necessarily relies on them. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). The

8   court may also consider matters of public record. Id.

9   **2. Review under the APA**

10       Although the INA does not set a deadline for consular officers to review and adjudicate

11  visa applications, defendants have a duty to act within a reasonable time. See 5 U.S.C. § 555.

12  "[T]he APA and related case law provide 'law to apply' in determining whether defendants have

13  failed to act within a reasonable time." Khan v. Johnson, 65 F. Supp. 3d 918, 926 (C.D. Cal.

14  2014). "[F]ederal courts routinely assess the 'reasonableness' of the pace of agency action under

15  the APA." Id. (citation omitted).

16       Under the APA, the reviewing court must "compel agency action ... unreasonably

17  delayed[.]" 5 U.S.C. § 706(1). However, "[a] court can compel agency action under this section

18  only if there is a specific, unequivocal command placed on the agency to take a discrete agency

19  action, and the agency has failed to take that action." Vietnam Veterans of Am. v. Cent. Intel.

20  Agency, 811 F.3d 1068, 1075 (9th Cir. 2016) (internal marks and citation omitted). "The agency

21  action must be pursuant to a legal obligation 'so clearly set forth that it could traditionally have

22  been enforced through a writ of mandamus.'" Id. at 1075-76 (citation omitted).

23       Similarly, the Mandamus Act "provides district courts with mandamus power 'to compel

24  an officer or employee of the United States or any agency thereof to perform a duty owed to the

25  plaintiff.'" Indep. Min. Co. v. Babbitt, 105 F.3d 502, 507 (9th Cir. 1997) (quoting 28 U.S.C. §

26  1361). "Although the exact interplay between these two statutory schemes has not been

27  thoroughly examined by the courts, the Supreme Court has construed a claim seeking mandamus

28  under the [Mandamus Act] 'in essence,' as one for relief under § 706 of the APA." Id. (quoting

1 | <u>Japan Whaling Ass'n v. Am. Cetacean Socy</u>, 478 U.S. 221, 230 n.4 (1986)). "Because the relief
2 | sought is essentially the same, in the form of mandamus," the court analyzes plaintiffs'
3 | entitlement to relief under the APA. <u>Id.</u>
4 | **B.  Rule 12(b)(6) Analysis**
5 | Plaintiffs argue defendants have a mandatory, nondiscretionary duty to allocate and
6 | adjudicate visas and applications under § 1202(b) of the INA, which provides "[a]ll immigrant
7 | visa applications *shall* be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b)
8 | (emphasis added). (ECF No. 13 at 6.) Plaintiffs also cite 22 C.F.R. § 42.62:

> Every alien executing an immigrant visa application must be
> interviewed by a consular officer who shall determine on the basis of
> the applicant's representations and the visa application and other
> relevant documentation—
>
> (i) The proper immigrant classification, if any, of the visa applicant,
> and
>
> (ii) The applicant's eligibility to receive a visa.

14 | 22 C.F.R. § 42.62(b).
15 | "Courts are split on whether there is a mandatory duty to review and adjudicate immigrant
16 | visa applications under § 1202(b)." <u>Iqbal</u>, 2023 WL 7418353, at *6-7 (joining with the district
17 | courts holding there is a clear duty). Courts "take varying approaches depending on the individual
18 | facts of the cases." <u>Kiani</u>, 2024 WL 658961, at *5 (finding the plaintiff adequately alleged a
19 | nondiscretionary duty). Some courts find the use of the word "shall" in § 1202(b) indicates a
20 | mandatory nondiscretionary duty to review and adjudicate immigrant visa applications. <u>See</u> <u>Iqbal</u>,
21 | 2023 WL 7418353; <u>but see</u> <u>Mueller v. Blinken</u>, No. 4:23-CV-24, 2023 WL 4759245, at *5 (E.D.
22 | Va. July 17, 2023) (finding no mandatory nondiscretionary duty based on § 1202(b) or the other
23 | statutes and regulations advanced).
24 | Although neither the immigration statutes nor regulations prescribe deadlines by which
25 | immigrant visa applications must be adjudicated, the absence of a specific time frame does not
26 | preclude review. <u>Assadian v. Oudkirk</u>, No. 3:22-CV-00921-RBM-BGS, 2023 WL 6237976, at *5
27 | (S.D. Cal. Sept. 25, 2023). A non-discretionary duty is upon the Government under 5 U.S.C. §
28 | 555, which requires adjudication of immigrant visa applications within a reasonable time. <u>See</u> 5

U.S.C. § 555(b); Ahmed v. Bitter, No. 4:22-CV-02474, 2024 WL 1340255, at *3 (S.D. Tex. Mar. 28, 2024); see also Iqbal, 2023 WL 7418353, at *7 ("the court finds it may compel the agency to take action under the APA itself, which plaintiff's invoke in their complaint [by] alleging defendants unreasonably delayed adjudication of their visas in violation of 5 U.S.C. § 555(b)"). Accepting all allegations as true and drawing all inferences in the light most favorable to plaintiffs, defendants have a nondiscretionary duty to adjudicate plaintiffs' immigrant visa petitions within a reasonable time. Id.

The next question is whether plaintiffs have sufficiently pled the alleged delay was unreasonable. In determining whether an agency action was unreasonably delayed, courts consider the six "TRAC" factors set forth in Telecomms. Research and Action Ctr. ("TRAC") v. FCC, 750 F.2d 70, 79-80 (D.C. Cir. 1984). "What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." Gelfer v. Chertoff, No. 06-06724, 2007 WL 902382, at *2 (N.D. Cal. Mar. 22, 2007) (citation omitted). Because of the fact-intensive nature of the reasonableness determination, courts disagree on "whether the TRAC factors should be analyzed to resolve a motion to dismiss." Ortiz v. U.S. Dep't of State, No. 22-00508, 2023 WL 4407569, at *7 (D. Idaho July 7, 2023) (collecting cases). Some courts have declined to consider the factors as premature, see, e.g., Iqbal, 2023 WL 7418353, at *8 ("the reasonableness inquiry is best resolved ultimately on a full factual record"), while others have considered the factors to determine whether a plaintiff has sufficiently alleged unreasonable delay, see Abbassi v. Gaudiosi, No. 1:23-CV-01573-CDB, 2024 WL 1995246, at *4 (E.D. Cal. May 6, 2024); Shahijani v. Laitinen, No. 23-03967, 2023 WL 6889774, at *3 (C.D. Cal. Oct. 6, 2023).

Here, the defendants alternately move for summary judgment. As such, they do not argue the court should refrain from considering the TRAC factors. In this instance, plaintiffs adequately alleged an unreasonably delay by defendants in adjudicating their visa applications because between 1 year and 3.5 years passed between the last agency action and the filing of the complaint. See Iqbal, 2023 WL 7418353, at *3 (finding unreasonable delay sufficiently pled based on alleged delays of twelve to fifteen months without interviews being scheduled after the

NVC found the beneficiary plaintiffs to be documentarily qualified). Accordingly, defendants' motion to dismiss for failure to state a claim is denied, and the court will consider the TRAC factors in the context of the factual record.

## V. Motion for Summary Judgment

### A. Legal Standard

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" City of Pomona v. SQM North America Corp., 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "The moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." Id. "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." City of Pomona, 750 F.3d at 1049. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Id. (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

### B. Undisputed Facts

#### 1. Evidence Relevant to all Plaintiffs

Under defendants' evidence, more than 11, 907 documentarily-complete immediate relative visa applicants and more than 9,743 documentarily-complete family preference visa applicants were awaiting appointments at the U.S. Embassy in Islamabad as of January 10, 2024. (ECF No. 13-1, Undisputed Fact ("UF") 32, 33.) This backlog has resulted from various circumstances including a four-month suspension of visa services at the U.S. Embassy in Islamabad (and elsewhere) in March 2020 due to the COVID-19 pandemic, followed by a phased resumption of visa services with continuing restrictions; persistent staffing shortages at the Islamabad embassy; increased demand at the Islamabad embassy following suspension of operations at the U.S. Embassy in Kabul, Afghanistan, in August 2021; and prioritization of

1  processing Afghans seeking a special immigrant visa under the Afghan Allies Protection Act of

2  2009. (See id., UF 9-35 and evidence cited therein.) Plaintiffs do not dispute defendants' evidence

3  on these points but assert "[f]urther discovery is required on the effects of Expansion of Consular

4  Chiefs Authority, NIV Prioritization Scheme, [and] Understaffing Scheme of U.S. Embassy in

5  Islamabad." (See id.)

6  **2.  Evidence Relevant to Specific Plaintiffs**

7  Plaintiff Zaid Khan filed the I-130 petition on behalf of plaintiff Sana Aziz, whose visa

8  application was documentarily complete on April 1, 2022. (UF 36, 38.) There were 6,278

9  individuals who were documentarily complete before April 2022 in family preference categories

10  ahead of plaintiff Sana Aziz in the queue to be scheduled for an immigrant visa interview at the

11  U.S. Embassy in Islamabad. (UF 39.)

12  Plaintiff Ziad Irfan Al Haq filed the I-130 petition on behalf of plaintiff Zoya Al Haq,

13  whose visa application was documentarily complete on October 12, 2022. (UF 40, 42.) There

14  were 2,640 individuals who were documentarily complete before October 2022 in immediate

15  relative categories ahead of plaintiff Zoya Al Haq in the queue to be scheduled for an immigrant

16  visa interview at the U.S. Embassy in Islamabad. (UF 43.)

17  Plaintiff Sakhir Sohail filed the I-130 petition on behalf of plaintiff Marium Iqbal Hashmi,

18  whose visa application was documentarily complete on November 16, 2022. (UF 48, 50.) There

19  were 3,229 individuals who were documentarily complete before November 2022 in immediate

20  relative categories ahead of plaintiff Marium Iqbal Hashmi in the queue to be scheduled for an

21  immigrant visa interview at the U.S. Embassy in Islamabad. (UF 51.)

22  Plaintiff Shahzeb Ashfaz filed the I-130 petition on behalf of plaintiff Noha Shahzeb,

23  whose visa application was documentarily complete on November 22, 2022. (UF 52, 54.) There

24  were 3,229 individuals who were documentarily complete before November 2022 in immediate

25  relative categories ahead of plaintiff Noha Shahzeb in the queue to be scheduled for an immigrant

26  visa interview at the U.S. Embassy in Islamabad. (UF 55.)

27  Plaintiff Mohammad Ali Bawany filed the I-130 petition on behalf of Fatima Arif Tabba,

28  whose visa application was documentarily complete on November 17, 2022. (UF 56, 58.) There

were 3,229 individuals who were documentarily complete before November 2022 in immediate

relative categories ahead of plaintiff Arif Tabba in the queue to be scheduled for an immigrant

visa interview at the U.S. Embassy in Islamabad. (UF 59.)

Plaintiff Saeed Mahmood Raja filed the I-130 petition on behalf of plaintiff Saqia Bibi,

whose visa application was documentarily complete on May 26, 2021. (UF 80, 82.) Beneficiary

plaintiffs Ilsa Babar and Nuhammad Ammar Mallal are derivative family members on this

petition. (ECF No. 1, ¶ 23.) There is currently no visa number available to plaintiff Saiqa Bibi as

the sister of a U.S. citizen with a priority date of June 22, 2007. (UF 83.) Plaintiff Saiqa Bibi is

not eligible for an immigrant visa until a visa number is available and will not be scheduled for an

interview until that time. (Id.)

Plaintiff Shameela Tabusam filed the I-130 petition on behalf of plaintiff Naila Tabassum,

whose visa application and those of the derivative family members were documentarily complete

on March 3, 2021. (UF 88, 90.) There were 2,787 individuals who were documentarily complete

before March 2021 in family preference categories ahead of plaintiff Naila Tabassum in the

queue to be scheduled for an immigrant visa interview at the U.S. Embassy in Islamabad. (UF

91.)

Plaintiff Riaz Ahmed filed the I-130 petition on behalf of plaintiff Mehdi Khan, whose

visa application was documentarily complete on November 1, 2022. (UF 100, 102.) Beneficiary

plaintiffs Shafia Bibi and Asif Raza are derivative family members on this petition. (ECF No. 1, ¶

28.) There were 7,971 individuals who were documentarily complete before November 2022 in

family preference categories ahead of plaintiff Mehdi Khan in the queue to be scheduled for an

immigrant visa interview at the U.S. Embassy in Islamabad. (UF 103.)

### C.  Summary Judgment Analysis

In determining whether an agency action was unreasonably delayed, the court considers

the six "TRAC" factors:

> (1) the time agencies take to make decisions must be governed by a
> rule of reason; (2) where Congress has provided a timetable or other
> indication of the speed with which it expects the agency to proceed
> in the enabling statute, that statutory scheme may supply content for
> this rule of reason; (3) delays that might be reasonable in the sphere

of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

In re Nat. Res. Def. Council, Inc., 956 F.3d 1134, 1138-39 (9th Cir. 2020) (quoting TRAC, 750 F.2d at 79-80.

### 1.  First and Second **TRAC** Factors

The first TRAC factor, the rule of reason inquiry, considers the length of the delay and "whether the agency's response time ... is governed by an identifiable rationale." Poursohi v. Blinken, No. 21-cv-01960-TSH, 2021 WL 5331446, at *4 (N.D. Cal. Nov. 16, 2021) (quotation marks and citation omitted). The rule of reason inquiry is the most important factor, but no individual factor is determinative. In re A Cmty. Voice, 878 F.3d 779, 786 (9th Cir. 2017). The second factor, whether Congress has provided a timetable, "may supply content for th[e] rule of reason." TRAC, 750 F.2d at 80. Accordingly, the court considers the first and second factors together.

Plaintiffs argue the delays at issue exceed the 180-day timeframe Congress has suggested as a reasonable guideline: "It is the sense of Congress that the processing of any immigration benefit application should be completed not later than 180 days after the initial filing of the application..." 8 U.S.C. § 1571(b). (ECF No. 13 at 52.) However, the Ninth Circuit has held similar "sense of Congress" language is "non-binding, legislative dicta" which creates no obligations. See Yang v. California Dep't of Soc. Servs., 183 F.3d 953, 961-62 (9th Cir. 1999).

Plaintiffs have not shown Congress requires immigrant visa applications to be processed on a specific timeline, and courts in the Ninth Circuit have found no such timeline exists. See Ahmed v. U.S. Dep't of State, No. 23-CV-02474-SVK, 2024 WL 315705, at *5 (N.D. Cal. Jan. 26, 2024) (citing collected cases). Where Congress has not supplied a time-period for agency action, courts look to caselaw to determine whether the agency's action is unreasonably delayed. See, e.g., Sarlak v. Pompeo, No. CV 20-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) ("Absent a congressionally supplied yardstick, courts typically turn to case law as a

12

1   guide.").

2          Defendants argue courts have found delays of up to 38 months to be not unreasonable.

3   (ECF No. 11 at 22-24.) Under defendants' evidence, the visa delays at issue stem from the

4   backlog of applicants awaiting interviews and limitations on how many visa interviews the U.S.

5   Embassy in Islamabad can conduct each day. Defendants argue the impacts of the global COVID-

6   19 pandemic and other circumstances have resulted in a significant backlog of immigrant visa

7   cases waiting availability for an interview at the Islamabad Embassy, caused by no fault of the

8   Department or the Embassy. (Id. at 23.)

9          Plaintiffs counter that many of the cases cited by defendants arose under different facts

10  than those present here. (ECF No. 13 at 50.) Plaintiffs argue the court should allow the parties to

11  conduct discovery relevant to the rule of reason inquiry. (Id.) Plaintiffs cite two cases finding

12  unreasonable delay and argue courts find "18 months to three years is unreasonable" in typical

13  visa delay cases. (Id. at 51.) Plaintiffs argue the court should count the delay from when the

14  plaintiffs filed their Form I-130, which occurred between 31-211 months prior to the filing of

15  their opposition papers. (Id.)

16         The court will measure the relevant period of delay "from the last government action."

17  Dang v. Mayorkas, No. 23-CV-02212-LB, 2023 WL 8007993, at *4 (N.D. Cal. Nov. 17, 2023).

18  For beneficiary plaintiffs awaiting consular interviews, that was the date each applicant was

19  deemed documentarily qualified. See Ahmed v. U.S. Dep't of State, 2024 WL 315705, at *4.

20         The cases cited by plaintiffs as support for finding unreasonable delay here are not

21  particularly persuasive, given their different factual backgrounds and procedural postures. See

22  Doe v. Risch, 398 F. Supp. 3d 647, 656 (N.D. Cal. 2019) (granting plaintiff's motion for

23  summary judgment and finding the defendants' bare assertions were insufficient to justify the

24  nearly two and a half year delay in adjudicating the plaintiffs' petition for derivative asylum);

25  Alwan v. Risch, No. 2:18-CV-0073, 2019 WL 1427909, at *1 (S.D. Ohio Mar. 29, 2019)

26  (granting motion for default judgment and issuing writ of mandamus to adjudicate visa

27  applications in administrative processing). In addition, the court finds discovery is not necessary

28  or warranted prior to resolution of the pending motion. See, e.g., Ahmed v. U.S. Dep't of State,

2024 WL 315705, at \*6 (denying discovery to develop factual record as to reasonableness of two-year agency delay). Plaintiffs have not provided an affidavit or declaration within the meaning of Rule 56(d) of the Federal Rules of Civil Procedure. Plaintiffs have not proffered sufficient facts to show that some evidence sought exists, and that it would prevent summary judgment. See Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1161 (9th Cir. 2001) ("The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment.").

Ample caselaw holds similar delays of up to approximately two years or more are not unreasonable. See, e.g., Khalili-Araghi v. Bitter, No. 23-CV-00696-LB, 2023 WL 5988590, at \*5 (N.D. Cal. Sept. 13, 2023) (delay of nearly two years from being deemed documentarily prior to filing of action found not unreasonable); Ali v. U.S. Dep't of State, 676 F. Supp. 3d 460, 471 (E.D.N.C. 2023) (courts "have declined to find a two-year period to be unreasonable as a matter of law"); Ahmed v. U.S. Dep't of Homeland Sec., 2022 WL 424967, at \*5 ("Plaintiff has not made out a reasonable-delay claim under the APA [based on an alleged delay of two and a half years].") ; Dastagir v. Blinken, 557 F. Supp. 3d 160, 162 (D.D.C. 2021) (delay of 29 months at the point of filing suit after being placed in administrative processing following consular interview was not unreasonable). In other immigration contexts, courts have found much lengthier delays to be not unreasonable. See, e.g., Ahmed v. U.S. Dep't of State, 2024 WL 315705, at \*4 (citing collected cases that hold that delays of three, four, and five years are not unreasonable under the APA).

Under the present circumstances, which include the prior phased resumption of visa services following the four-month suspension in March 2020 due to the COVID-19 pandemic, persistent staffing shortages at the Islamabad Embassy, increased demand, and prioritization of processing special immigrant visas under the Afghan Allies Protection Act of 2009, the first and second TRAC factors weigh in defendants' favor.

### 2.  Third and Fifth TRAC Factors

"The third and fifth factors overlap, requiring the court to consider whether human health and welfare are at stake, and the nature and extent of the interests prejudiced by the delay."

14

1    Poursohi, 2021 WL 5331446, at \*9. Defendants argue their policies that have contributed to the

2    backlog further human health and welfare, including prioritizing an urgent humanitarian crisis by

3    providing consular services to Afghans fleeing the Taliban takeover and slowing the transmission

4    of COVID-19. (ECF No. 11 at 27.) Plaintiffs argue in opposition to the motion that they have

5    experienced emotional suffering due to family separation. (See ECF No. 13 at 27.) Detriments

6    and suffering experienced due to family separation would weigh in favor of the plaintiffs. See

7    Ahmed v. U.S. Dep't of State, 2024 WL 315705, at \*5; Kapoor v. Blinken, No. 21-CV-01961-

8    BLF, 2022 WL 181217, at \*8 (N.D. Cal. Jan. 20, 2022). However, plaintiffs did not submit

9    evidence on these points. Under the present circumstances, the court finds these factors are

10    neutral.

### 3.  Fourth TRAC Factor

12          Under the fourth TRAC factor, the court considers the effect of expediting the

13    adjudication of the plaintiffs' applications on other agency action of a higher or competing

14    priority. Kapoor, 2022 WL 181217, at \*8. Plaintiffs argue the court should reject defendants'

15    arguments that there is an ordered line to skip. (ECF No. 13 at 54.) However, the evidence

16    plaintiffs offer fails to establish the lack of a queue. (See ECF No. 13-5.) Defendants argue they

17    produced evidence about the queue and each noncitizen plaintiff's place in it, and plaintiffs

18    admitted to these facts. (See ECF No. 13-1, UF 39, 43, 47, 51, 55, 59, 67, 87, 91, 95, 99, 103.)

19    The court finds this factor favors the defendants because expediting the adjudication of the

20    plaintiffs' applications would only cause other applicants to wait longer. See Throw v. Mayorkas,

21    No. 3:22-CV-05699-DGE, 2023 WL 2787222, at \*5 (W.D. Wash. Apr. 5, 2023) (noting that

22    many families face delay and ordering the State Department to schedule the beneficiary plaintiff's

23    interview would not ameliorate the situation); Jain v. Renaud, No. 21-CV-03115-VKD, 2021 WL

24    2458356, at \*6 (N.D. Cal. June 16, 2021) ("Most courts have found that the fourth TRAC factor

25    weighs heavily in the agency's favor when a judicial order putting plaintiffs at the head of the line

26    would simply move all others back one space and produce no net gain.").

27    ////

28    ////

**4.  Sixth <u>TRAC</u> Factor**

The sixth <u>TRAC</u> factor considers any allegations of impropriety. <u>Ahmed v. U.S. Dep't of State</u>, 2024 WL 315705, at *6. The court need not find any impropriety lurking behind agency lassitude to conclude that agency action is unreasonably delayed. <u>TRAC</u>, 750 F.2d at 80. Nevertheless, where, as here, plaintiffs have not made cognizable allegations of impropriety, "courts in the Ninth Circuit have found this factor to either weigh in the government's favor or to be neutral." <u>Poursohi</u>, 2021 WL 5331446, at *11. The sixth <u>TRAC</u> factor is neutral. <u>See Ahmed v. U.S. Dep't of State</u>, 2024 WL 315705, at *6.

**5.  Weighing the <u>TRAC</u> Factors for Individual Plaintiffs**

As set forth above, the <u>TRAC</u> factors either weigh in favor of defendants or are neutral. Considering all the <u>TRAC</u> factors, it is clear the delays of 30 months or less in scheduling plaintiffs' consular interviews are not unreasonable. <u>See Begum v. U.S. Dep't of State</u>, No. 1:22-CV-00478-JMC, 2022 WL 16575703, at *7 (D. Md. Oct. 31, 2022) (holding there was no unreasonable delay where only thirty-three months had passed without the scheduling of consular interviews). Stated differently, the applications that became documentarily complete after January of 2022 have not been unreasonably delayed under the APA. Plaintiffs have not demonstrated the existence of any disputed material facts that would preclude summary judgment on claims alleging delays of 30 months or less measured from the date of becoming documentarily qualified to the present date. The court grants the defendants' motion for summary judgment as to the claims of plaintiffs Zaid Khan, Sana Aziz, Ziad Irfan Al Haq, Zoya Al Haq, Sakhir Sohail, Marium Iqbal Hashmi, Shahzeb Ashfaz, Noha Shahzeb, Mohammad Ali Bawany, Fatima Arif Tabba, Riaz Ahmed, Mehdi Khan, Shafia Bibi, and Asif Raza.

Of the remaining plaintiffs, two primary beneficiary plaintiffs have waited more than 30 months since becoming documentarily qualified. Saqia Bibi and Naila Tabassum have waited more than 37 months and more than 40 months, respectively, since becoming documentarily qualified.

Plaintiff Saqia Bibi's visa application was documentarily complete on May 26, 2021. (UF 82.) This is a delay of more than 37 months and counting. However, there is currently no visa

1    number available to plaintiff Saiqa Bibi as the sister of a U.S. citizen with a priority date of June

2    22, 2007. (UF 83.) Plaintiff Saiqa Bibi is not eligible for an immigrant visa until a visa number is

3    available. (Id.) Thus, defendants presently have no clear duty to act. See, e.g., Wenqing Wang v.

4    Chertoff, No. SACV07-01260-CJC-ANX, 2008 WL 11342756, at *4 (C.D. Cal. Mar. 12, 2008)

5    ("Ms. Wang has not demonstrated an unreasonable delay by Defendants in adjudicating her

6    adjustment of status application because she is not yet within the date range of applications

7    eligible to receive a visa number."). Accordingly, the court grants the defendants' motion for

8    summary judgment as to the claims of plaintiffs Saeed Mahmood Raja, Saqia Bibi, Ilsa Babar,

9    and Nuhammad Ammar Mallal.

10          Plaintiff Shameela Tabusam submitted the I-130 petition on behalf of Naila Tabassum,

11   whose visa application was documentarily complete on March 3, 2021. (UF 88, 90.) Beneficiary

12   plaintiff Khalid Mahmood is a derivative family member on this petition. (ECF No. 1, ¶ 25.) The

13   length of the delay for these plaintiffs is more than 40 months and counting. At the time of the

14   filing of defendants' motion for summary judgment there were 2,787 individuals who were

15   documentarily complete before March 2021 in family preference categories ahead of plaintiff

16   Tabassum in the queue to be scheduled for an immigrant visa interview at the U.S. Embassy in

17   Islamabad. (UF 91.)

18          Defendants argue even in normal circumstances, courts have found delays of four years or

19   less to be not unreasonable. (ECF No. 11 at 23.) As plaintiffs note, many of the cases cited by

20   defendants arose under substantially different sets of facts, including different types of visa

21   applications. However, district courts have found longer delays are not unreasonable in similar

22   contexts. In Borzouei v. Bitter, No. 22-cv-872-MMA (KSC), 2022 WL 17682659 (S.D. Cal. Dec.

23   14, 2022), the court found an alleged four-year delay in waiting for a consular interview to be

24   scheduled on a Form I-130 petition did not warrant mandamus relief. Similarly, in Varghese v.

25   Blinken, No. 21-CV-2597 (CRC), 2022 WL 3016741, (D.D.C. July 29, 2022), the court denied

26   relief for an alleged unreasonable delay based on an approximate four-year delay waiting for a

27   consular interview).

28   ////

The delay in scheduling plaintiff Naila Tabassum's interview is well under four years. As in <u>Borzouei v. Bitter</u>, "the delay in processing visa applications is systemic and it is unquestionably one of the many unfortunate results of recent events, including the COVID-19 pandemic and the fall of Kabul." 2022 WL 17682659, at *9. Applying the <u>TRAC</u> factors and finding the delay not unreasonable under the circumstances, the court grants the defendants' motion for summary judgment as to the claims of plaintiffs Shameela Tabusam, Naila Tabassum, and Khalid Mahmood.

### C.  Mandamus

As set forth above, a claim seeking mandamus under the Mandamus Act is, in essence, the same as one for relief under § 706 of the APA. <u>Japan Whaling Ass'n</u>, 478 U.S. at 230 n.4 (citing 5 U.S.C. § 706(1)). Because an adequate remedy exists under the APA, the court has analyzed plaintiff's claim of delay under the APA only. <u>See Vaz v. Neal</u>, 33 F.4th 1131, 1135 (9th Cir. 2022); <u>Ahmed v. Bitter</u>, 2024 WL 1340255, at *4. For the same reasons set forth above, the court grants defendants' motion for summary judgment as to the Mandamus Act claim.

### D.  Remaining Plaintiffs with APA Claims

The parties presented no evidence or arguments as to the claims of plaintiffs Laiba Mishal, Zaeem Ali, and Mumtaz Jahan. Plaintiff Laiba Mishal is a derivative family member on the petition submitted by Iqbal Sial for beneficiary plaintiff Kausar Parveen Sial. (ECF No. 1, ¶ 26.) Plaintiffs Zaeem Ali and Mumtaz Jahan are derivative family members on the petition submitted by Iqbal Sial for beneficiary plaintiff Irshad Hussain Sial. (<u>Id.</u>, ¶ 27.) On May 23, 2024, the parties filed a stipulation for voluntary dismissal of the claims of Iqbal Sial, Kausar Parveen Sial, and Irshad Hussain Sial, among others. (ECF No. 22.) Counsel for the parties shall confer, if necessary, and determine the status of the claims of these plaintiffs.

### IV.  Conclusion and Order

For the reasons set forth above, IT IS ORDERED as follows:

1.  Defendants' request for judicial notice (ECF No. 17) is DENIED.

2.  Defendants' motion to dismiss (ECF No. 11) is DENIED.

////

3. Defendants' alternate motion for summary judgment (ECF No. 11) is GRANTED as to the claims of plaintiffs Zaid Khan, Sana Aziz, Ziad Irfan Al Haq, Zoya Al Haq, Sakhir Sohail, Marium Iqbal Hashmi, Shahzeb Ashfaz, Noha Shahzeb, Mohammad Ali Bawany, Fatima Arif Tabba, Riaz Ahmed, Mehdi Khan, Shafia Bibi, Asif Raza, Saeed Mahmood Raja, Saqia Bibi, Ilsa Babar, Nuhammad Ammar Mallal, Shameela Tabusam, Naila Tabassum, and Khalid Mahmood.

4. Within 14 days of the date of this order, counsel for the parties shall confer, if necessary, and file either a joint status report on the status of the claims of plaintiffs Laiba Mishal, Zaeem Ali, and Mumtaz Jahan, or a further stipulation for voluntary dismissal, if appropriate.

Dated: July 17, 2024

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

8
Khan23cv2814.mtd.sj